IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JUAN SUARES CARRASCO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO.  EP-14-CV-36-MAT |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision.  Plaintiff appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act.  Jurisdiction is predicated upon 42 U.S.C. § 405(g).  Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C of the Local Court Rules of the Western District of Texas.  For the reasons below, the Commissioner's decision is AFFIRMED.

### I. PROCEDURAL HISTORY

On September 16, 2010, Plaintiff protectively filed applications for DIB and SSI in which he alleged disability since July 25, 2010 due to head trauma, neurological disorder, anxiety, and

depression. (R. 11, 135-143, 174).[1]  After his applications were denied initially and again upon reconsideration, Plaintiff requested a hearing. (R. 74-79, 82-87, 90-94).  On August 6, 2012, Plaintiff appeared with his attorney for a hearing before an Administrative Law Judge ("ALJ"). (R. 45-67).  His applications for benefits were denied by the ALJ's written decision issued on October 19, 2012. (R. 11-20).  On November 29, 2013, the Appeals Council affirmed the ALJ's decision to deny benefits, thereby making it the final decision of the Commissioner. (R. 1-6).

On January 28, 2014, Plaintiff submitted his complaint along with a motion to proceed *in forma pauperis*. (ECF No. 1).[2]  On February 5, 2014, Plaintiff's motion to proceed *in forma pauperis* was granted, and his complaint was filed. (ECF Nos. 4 & 5).  On April 10, 2014, Defendant filed an answer and a certified copy of the transcript of the administrative proceedings. (ECF Nos. 10 & 11).  On April 15, 2014, the District Judge entered an order transferring the case to the undersigned for all proceedings. (ECF No. 14).  On July 16, 2014, Plaintiff filed his Brief in Support of Claim. (ECF No. 21).  On August 19, 2014, the Brief in Support of the Commissioner's Decision was filed. (ECF No. 24).

## II. BACKGROUND

Plaintiff was born on November 24, 1950, making him 61 years old at the time of the ALJ's decision on October 19, 2012. (R. 20, 135).  He is able to communicate in English and has a high school education obtained by GED. (R. 49, 173, 175).  He has past relevant work experience as a front office manager, baggage checker, delivery driver, and food service manager. (R. 65).  Plaintiff

---

[1] Reference to the record of administrative proceedings is designated by "(R. [page number(s)])."

[2] Reference to documents filed in this case is designated by "(ECF No(s). [document entry number(s)])."

testified he can no longer work due to severe headaches, concentration problems, lack of coordination, insomnia, blurry vision, dry throat, stomach ache, dizziness, fatigue, low energy, rheumatoid arthritis in his ankles, knees, elbow, cervical spine, and fingers, chronic kidney disease, numbness, tingling, cramping and pain, rated at a 10 on the pain scale, depression, and the need to take three to four naps daily.   (R. 54-59).

## III. ISSUE PRESENTED

Plaintiff contends the ALJ's residual functional capacity[3] determination is not supported by substantial evidence.

## IV. DISCUSSION

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence on the record as a whole, and whether the proper legal standards were applied in evaluating the evidence. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).  Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In determining whether there is substantial evidence to support the findings of the

---

[3] Residual functional capacity ("RFC") is defined in the regulations as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1567(d), 416.967(d).

Commissioner, the court must carefully examine the entire record, but may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Spellman v. Shalala*, 1 F.3d at 360.

B. Evaluation Process and Burden of Proof

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a medically determinable physical or mental impairment(s) that is severe; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment(s) prevents the claimant from performing past relevant work; and, (5) whether the impairment(s) prevents the claimant from doing any other work. 20 C.F.R. §§ 404.1520, 416.920. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Once this burden is met, the burden shifts to

the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work. *Id.*

## C. The ALJ's Decision

In her written decision, the ALJ determined as a threshold matter that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. (R. 13). The ALJ found Plaintiff had not engaged in substantial gainful activity since July 25, 2010, the alleged onset date. *Id.* At the next step, the ALJ determined Plaintiff has severe impairments consisting of mild degenerative changes of the cervical spine, anxiety, and depression. *Id.* The ALJ further determined Plaintiff's impairments of cellulitis of the face, right shoulder pain, arthritis of the hands, and chronic kidney disease are non-severe impairments. (R. 13-14).

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14-15). Before reaching step four, the ALJ found Plaintiff retains the residual functional capacity [4] ("RFC") to perform medium work[5], except he is limited to simple, routine,

---

[4] Residual functional capacity is defined in the regulations as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).

[5] Medium work involves lifting more than 50 pounds at a time with frequent lifting or carrying of objects weighing 25 pounds or more. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

repetitive work tasks, i.e., unskilled work with no more than an SVP of 2.[6]   (R. 16-18).   Based on

Plaintiff's RFC, the ALJ found he is not able to perform any of his past relevant work which was

semi-skilled[7] or skilled.[8]   (R. 18-19).

At step five, relying on the Medical-Vocational Guidelines as a framework for decision

making, the ALJ determined there are other jobs that Plaintiff can perform.   (R. 19-20).   Therefore,

the ALJ determined Plaintiff was not disabled.   (R. 20).

D. Analysis of Plaintiff's Claim

Plaintiff contends the ALJ's RFC finding for a wide range of medium work limited to simple,

repetitive work tasks consistent with unskilled work with an SVP of no more than 2 is not supported

by substantial evidence because the ALJ failed to properly accommodate all limitations relating to

---

[6] SVP is an abbreviation for specific vocation preparation. It is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Dep't of Labor, *Dictionary of Occupational Titles* (DOT), App. C. II (4th ed. 1991). The DOT lists an SVP time for each occupation. An SVP of 2 corresponds to unskilled work under the skill level definitions in 20 C.F.R. §§ 404.1568 and 416.968, and typically has a learning period of "[a]nything beyond short demonstration up to and including 1 month." *Id.*

[7] Semi-skilled work needs some skills but does not require doing the more complex work duties. Such jobs may require alertness and close attention to watching machine processes; or inspecting, testing, or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage, or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks. 20 C.F.R. §§ 404.1568(b), 416.968(b).

[8] Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Such work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures, or abstract ideas at a high level of complexity. 20 C.F.R. §§ 404.1568(c), 416.968(c).

Plaintiff's severe and non-severe impairments. In support, Plaintiff relies on subjective evidence consisting of his testimony at the hearing that he has severe headaches, forgets things, has insomnia and sleep problems, cannot stand for very long, has rheumatoid arthritis affecting his ankles, knees, elbow, cervical spine, and fingers, can walk for no more than 15 to 20 minutes, sit for no more than 30 to 40 minutes, and has difficulty lifting things that weigh more than 10 pounds. (R. 54-55, 57-58). Plaintiff also relies on his reports of pain to the back of his head, his neck, hands, fingers, and legs, and his complaints of stress and anxiety and his reports of difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, climbing stairs, remembering, concentrating, completing tasks, understanding, following instructions, and using his hands. (R. (R. 185, 187, 196, 200, 207, 213, 218). Additionally, Plaintiff relies on objective medical evidence consisting of radiological findings from a computerized tomography ("CT") scan of his cervical spine on July 25, 2010, a CT scan of his upper extremity on July 28, 2010, x-rays of his hands and knees on July 11, 2011, and physical examinations in January, April, May, and December of 2102. (R. 287, 290, 585-586, 661-662, 695, 705-706, 717-718, 729-730).

In essence, Plaintiff argues the cited subjective complaints of pain and limitations, coupled with the radiological and laboratory findings, and the findings on physical examination, support a conclusion that his functional abilities are significantly more limited than found by the ALJ in her RFC assessment. Plaintiff posits that had the ALJ properly accommodated his conditions, she likely would have found him able to perform light or sedentary work, and a finding that he could perform light unskilled work would have directed a conclusion that he was disabled under Rule 202.06 of the Medical-Vocational Guidelines ("the Grids"), codified at 20 C.F.R. 404, Subpt. P, App. 2. After reviewing the record, the Court finds the ALJ's assessment of Plaintiff's RFC is supported by

substantial evidence, and there is no error shown on this ground.

Although Plaintiff testified he has extreme functional limitations and experiences constant pain at 10, on a pain scale of 1 to 10, the objective findings do not corroborate his subjective complaints. *See Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989) (claimant's subjective complaints must be corroborated, at least in part, by objective evidence). X-rays of Plaintiff's lumbar spine performed on April 4, 2012 were entirely normal with normal alignment and normal vertebral body height. (R. 17, 696-697). The CT scans of Plaintiff's cervical spine performed on July 25, 2010 and October 22, 2010, both showed only mild degenerative changes, but no central canal stenosis or nerve root compression. (R. 17, 287, 544). Likewise, a CT scan of Plaintiff's neck performed on August 17, 2011, showed only mild degenerative changes. (R. 576-577).

The CT scan of Plaintiff's right upper extremity performed on July 28, 2010, showed mild degenerative changes. (R. 290). X-rays of Plaintiff's hands taken on July 11, 2011, show the bony structures have normal mineralization. (R. 585). The only finding was a "slight fusiform soft tissue swelling" on one of the joints of the right middle finger and a "tiny smooth calcification" over the ulnar aspect of the outer joint space. *Id.* The x-rays of Plaintiff's knees taken on July 11, 2011, showed "very slight joint space narrowing" of the medial compartments, most likely representing "minimal osteoarthritis."[9] (R. 585-586). These medical findings do not coincide with his subjective complaints.

As for Plaintiff's complaint that there are objective findings to support a diagnosis of

---

[9] Osteoarthritis is a noninflammatory degenerative joint disease seen mainly in older persons. DORLAND'S ILLUS. MEDICAL DICTIONARY 1286 (29th ed. 2000).

rheumatoid arthritis ("RA")[10], including his elevated RA factor on October 9, 2010, July 8, 2011, and April 4, 2012, (R. 407, 591, 701), it appears his treating doctors ruled this out. Plaintiff was seen at a rheumatology clinic for evaluation in January 2012.   (R. 704).   Following examination and review of the x-rays of Plaintiff's hands and knees,   Dr. Michael and Dr. Castro both agreed no erosive changes were seen, and the pain in Plaintiff's joints appeared to be caused by osteoarthritis. *Id.* On April 19, 2012, he was seen at the clinic for a follow up appointment "on rheumatoid arthritis" at which it again was opined that his diffuse joint pain is probably due to osteoarthritis. (R. 695).   Notes dated July 9, 2012, state Plaintiff was "instructed to stop taking NSAIDs[11] (ibuprofen, celebrex, naproxen)" and discharged from the rheumatology clinic to follow up with his primary care provider. (R. 709).   His treatment records assess polyarthritis and osteoarthritis, without specifying rheumatoid arthritis. (R. 694, 709, 718, 726). Even assuming *arguendo* that Plaintiff has RA, the mere presence of a diagnosable condition does not establish the presence of functional limitations or disability. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

In addition to the findings on the rheumatology consultation, Plaintiff also relies on findings of severe osteoarthritis and the assessment of cervical spondylosis[12] by his primary care provider in January, May, and December of 2012. (R. 661-662, 717-718, 729-730).   The notes also reflect that when seen on these visits, Plaintiff was noted to be in no apparent distress, his extremities appeared normal, and a walking program was recommended. As stated by the ALJ, despite the diagnosis of

---

[10] Rheumatoid arthritis is a chronic systemic disease primarily of the joints, marked by inflammatory changes, muscle atrophy, and rarefaction of the bones. DORLAND'S ILLUS. MEDICAL DICTIONARY 151 (29th ed.  2000).

[11] NSAID is a common abbreviation for nonsteroidal anti-iflammatory drugs.

[12] Spondylosis is a general term for degenerative spinal changes due to osteoarthritis. DORLAND'S ILLUS. MEDICAL DICTIONARY 1684 (29th ed.  2000).

osteoarthritis, there are no doctor-imposed limitations in the record regarding Plaintiff's ability to sit, stand, walk, lift and carry. Finally, the ALJ noted that, in addition to the lack of objective findings, there was evidence of symptom magnification by Plaintiff as observed at the consultative mental examination on January 20, 2011. (R. 17, 453-456). In determining Plaintiff's RFC, The ALJ accommodated the mental and physical limitations that were supported by the record.[13]

It is the task of the ALJ to weigh the evidence. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The ALJ carefully considered all of Plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects of his symptoms. She determined based on the medical and other evidence of record that, while Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, his complaints were not entirely credible. (R. 16-18). The ALJ's determination that the medical evidence is more persuasive than the claimant's testimony is precisely the kind of determination the ALJ is best positioned to make. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Moreover, credibility determinations are entitled to great deference. *Newton*, 209 F.3d at 448. There is no prejudicial error shown in the ALJ's analysis of Plaintiff's mental and physical RFC.

The task of this Court is to determine if there is substantial evidence in the record as a whole which supports the ALJ's decision. *Chambliss*, 269 F.3d at 523, citing *Greenspan*, 38 F.3d at 240. The opinions of the state agency medical consultants, the consultative examiners, and the VE provide

---

[13] The ALJ also gave weight to the state agency medical consultants ("SAMCs") who reviewed the medical evidence and found that Plaintiff retained the mental RFC to understand, remember, and carry out detailed instructions, get along with coworkers, and adjust appropriately to changes in the work setting. (R. 473, 475). On reconsideration review, the SAMC opined Plaintiff was engaging in symptom exaggeration, e.g., reporting his wife feeds him, takes him one hour to make a simple sandwich, and he can walk a distance of only 2 feet. (R. 477).

substantial evidence for the ALJ's determination that Plaintiff is not disabled because he can perform

other work.  As substantial evidence supports the ALJ's decision, it must be affirmed. *Spellman*, 1

F.3d at 360.

CONCLUSION

It is therefore ORDERED that the decision of the Commissioner be, and it is hereby,

AFFIRMED.

SIGNED and ENTERED this 24th day of March, 2015.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE